UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES F. RINALDI, <br><br>             Petitioner, <br><br> v. <br><br> DAVID L. WINN, Warden, <br><br>             Respondent. | Civil Action No. 04-40115-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF**
**RESPONDENT'S MOTION TO DISMISS**

**INTRODUCTION**

The petitioner, James F. Rinaldi, an inmate at the Federal Medical Center, Devens ("FMC Devens"), filed a Petition for Writ of Mandamus and/or Habeas Corpus, and Authority in Support Thereof, Brought Pursuant to Title 28, United States Code, Sections 1361, and 2241 ("Petition"), alleging that the Federal Bureau of Prisons ("BOP") has incorrectly calculated the appropriate credit for good conduct time. For the reasons stated below, the Petition fails to state a claim upon which relief can be granted and must be dismissed.

**BACKGROUND**

On November 7, 2003, petitioner was sentenced in the United States District Court for the District of Nevada to serve 33 months imprisonment, with a three-year term of supervised release, for one count of travel with intent to engage in a sexual act with a juvenile, in violation of 18 U.S.C. § 2423(b). See Declaration of Stephanie Scannell ("Scannell Decl."), Attachment B

(Sentence Monitoring Computation Data).  Petitioner's release date, if he were to serve the full term of his sentence, is December 15, 2005.  Id.

For offenses committed after November 26, 1996, the Sentencing Reform Act, 18 U.S.C. § 3624(b), provides that inmates may receive credit toward the service of their sentence, which is commonly referred to as good conduct time credit ("GCT credit").  That statute provides in relevant part:

> (b) Credit toward service of sentence for satisfactory behavior.
>
> (1)  Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. * * * Credit that has not been earned may not later be granted.  Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.
>
> (2)  Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

Id.

The BOP has issued an implementing regulation, 28 C.F.R.§ 523.20, which provides:

> (a) When considering good conduct time for an inmate serving a sentence for an offense committed on or after April 26, 1996, the Bureau shall award:
>
> (1) 54 days credit for each year *served* (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has

>earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
>
>(2) 42 days credit for each year *served* (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.

Id. (emphasis added).

The calculation under the Sentencing Reform Act and relevant regulations is further explained in BOP Program Statement 5880.28, Sentence Computation Manual CCCA ("PS 5880.28"). See Scannell Decl., Attachment D (relevant portions attached). Consistent with the statute and regulation, PS 5880.28 provides that GCT credit "*is not* awarded on the basis of the length of the sentence, but rather on the number of days actually served." Id. Attachment D (Page 1-48) (emphasis in original). In other words, BOP does not simply multiply the number of years of the term of imprisonment by 54 days, the maximum amount provided for by § 3624(b). Rather, BOP first determines the defendant's date of release if his or her sentence is served in full, sometimes referred to as the "full term date," by adding the length of the term of imprisonment imposed to the date the sentence began, less any jail credit. Next, beginning at the end of the first year of the term of imprisonment, BOP subtracts 54 days of GCT credit from the full term date, which results in a new release date (full term date - 54 days = new release date). After service of each successive year, BOP subtracts 54 days of GCT credit from the newly established release date. Finally, the GCT credit for the last portion of a year of the term being served is prorated using a special formula (54/365 = 0.148). Id. Attachment D.

Thus, in accordance with § 3624(b)(1)'s directive that GCT credit in the last year shall be prorated, the implementing regulation and the Program Statement adjust for the fact that each

additional day of accrued GCT results in one day less of time served. Consequently, the days of credit and days of time served are adjusted to reflect that fact that an inmate granted GCT credit does not actually serve the entire "term of imprisonment."

In this case, pursuant to § 3624(b), the implementing regulation, and Program Statement 5880.28, the BOP has determined that, assuming good behavior, petitioner will be entitled to 129 days of GCT credit against his sentence, such that his projected release date is August 8, 2005. Id. Attachment B (Sentence Monitoring Computation Data); Exhibit C (Sentence Monitoring Good Time Data).

On June 16, 2004, petitioner filed the Petition at issue. In the Petition, petitioner seeks "to compel the [BOP] to calculate his federal sentence of imprisonment in accordance with the express provisions of 18 U.S.C. § 3624(b)." Petition at 1.[1] Specifically, petitioner contends BOP has established a policy, through its implementing regulation and Program Statement – that "materially undermines § 3624(b)" by calculating GCT credit for every year "actually served," rather than for each year of the "sentence imposed." Petition at 1, 6, 7. Petitioner requests a writ

---

[1] Petitioner did not exhaust his administrative remedies, id. ¶ 4 & Attachment E. There exists a judicially-created exhaustion requirement for habeas petitions brought pursuant to 28 U.S.C. § 2241. See Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999) ("Once administrative remedies under the Bureau of Prison's Administrative Remedies Program are exhausted, see 28 C.F.R. §§ 542.10-542.16, prisoners may then seek judicial review of the request for designation by filing a habeas petition under 28 U.S.C. § 2241."), cert. denied, 528 U.S. 1126 (2000). Respondent notes, however, that courts have reached differing conclusions as to whether this exhaustion requirement is futile. Compare Molina v. Wendt, 2004 WL 1490029 (N.D. Tex. July 1, 2004) (exhaustion not futile), report and recommendation adopted by 2004 WL 161942 (N.D. Ill. July 16, 2004); Sanchez v. Wendt, 2003 WL 22327877 (N.D. Tex. Oct. 8, 2003) (same), report and recommendation adopted by 2003 WL 22961222 (N.D. Tex. Oct. 27, 2003); with Caldwell v. Scibana, 2004 WL 1631290 (W.D. Wisc. July 19, 2004) (exhaustion futile); Martinez v. Wendt, 2003 WL 22456808 (N.D. Tex. Oct. 24, 2003) (same), report and recommendation adopted by 2003 WL 22724755 (N.D. Tex. Nov. 18, 2003).

of mandamus and/or habeas corpus that would "compel[] the respondent to re-compute his sentence, and award him good conduct time totalling [sic] fifty-four days for each year of the 'sentence imposed . . . .'" Petition at 7.

On August 26, 2004, this Court entered an Order directing that the Clerk serve a copy of the Petition on respondent and the United States Attorney, and directed that respondent file an answer or other responsive pleading withing 28 days of receipt of the Order. Respondent received a copy of this Court's Order on September 1, 2004.

## STANDARDS

### A. Mandamus

"The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). See In re Sterling Suarez, 306 F.3d 1170, 1173 (1st Cir. 2002) ("Ordinarily, mandamus is treated as an extraordinary remedy granted only where there is a clear entitlement to relief and threat of irreparable harm."). To ensure that mandamus remains an extraordinary remedy, a petitioner must show that they lack adequate alternative means to obtain the relief they seek, and also carry "the burden of showing that [their] right to issuance of the writ is 'clear and indisputable." Mallard v. United States Dist. Court for Southern Dist. of Iowa, 490 U.S. 296, 309 (1989) (internal quotation omitted).

### B. 28 U.S.C. § 2241

A motion for habeas corpus relief pursuant to 28 U.S.C. § 2241 "'generally challenges the *execution* of a federal prisoner's sentence, including such matters as the . . . computation of a

prisoner's sentence by prison officials . . . .'" Gonzalez v. United States, 150 F. Supp.2d 236, 241 (D. Mass. 2001) (quoting Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001) (emphasis in original)).

    C.    Statutory Interpretation

The Supreme Court has instructed that, in reviewing an agency's interpretation of a statute that it administers, courts must engage in a bifurcated, or two-step inquiry:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

In determining whether Congress has spoken directly to the precise question at issue, "the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). At the same time, "the task of statutory interpretation involves more than the application of syntactic and semantic rules to isolated sentences. Even plain meaning can give way to another interpretation if necessary to effectuate Congressional intent." Cablevision of Boston, Inc. v. Public Improvement Comm'n of Boston, 184 F.3d 88, 101 (1st Cir. 1999) (citing Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 825 (1st Cir.1992), and SEC v. Lehman Bros., Inc., 157 F.3d 2, 8 (1st Cir.1998)). Thus, "[r]ather than 'culling selected words [or

sentences] from a statute's text and inspecting them in an antiseptic laboratory setting, a court engaged in the task of statutory interpretation must examine the statute as a whole, giving due weight to design, structure, and purpose as well as to aggregate language.'" Id. (quoting O'Connell v. Shalala, 79 F.3d 170, 176 (1st Cir.1996)).  As the Supreme Court has emphasized, it is a "cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context."  King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991).

## ARGUMENT

I.   **THE TEXT AND STRUCTURE OF 18 U.S.C. § 3624(b) REVEAL THAT CONGRESS INTENDED THAT GOOD CONDUCT TIME BE AWARDED BASED UPON TIME ACTUALLY SERVED**

"In plotting the contours of a statute, courts must look first to its language and structure." Plumley v. Southern Container, Inc., 303 F.3d 364, 369 (1st Cir. 2002).  Here, § 3624(b)(1) provides, in relevant part, that "a prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, *beyond the time served*, of up to 54 days *at the end of each year of the prisoner's term of imprisonment*, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, *during that year*, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . ." 18 U.S.C. § 3624(b)(1) (emphasis added).  The statute further provides "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."  Id.

This statutory language reveals Congress' design that inmates may earn GCT credit during the course of the service of their sentence, provided they display exemplary compliance

with disciplinary regulations. The statute provides that GCT credit of up to 54 days may be awarded "at the end of each year of the prisoner's term of imprisonment," so long as "during that year," the inmate satisfied the statutory preconditions. In other words, § 3624(b) requires that an inmate actually be incarcerated during the year in which GCT credit is awarded; otherwise, it would be impossible to measure whether he or she had displayed exemplary compliance with disciplinary regulations "during that year."

Thus, the statutory language reveals Congress' intent to predicate GCT credit on the time an inmate actually serves, rather than on the mere length of the original sentence. Indeed, this conclusion is inescapable. If petitioner is correct that the GCT credit to which an inmate is entitled is simply calculated by multiplying 54 days for each year of the "sentence imposed," Petition at 7, that would mean that an inmate serving a ten-year sentence, for example, would be entitled to 540 days of GCT credit, even though that inmate would not serve any of the tenth year of imprisonment, and only a portion of the ninth year of imprisonment, as a result of the GCT credit of 540 days. Such a result cannot be squared with the statutory directive that 54 days of GCT credit may be awarded "at the end of each year of the prisoner's term of imprisonment," so long as "during that year," the inmate satisfied the statutory preconditions. As the United States District Court for the District of Connecticut has persuasively reasoned: "In her argument, Webb fails to acknowledge that with each annual award of good time credit, her release date is adjusted. . . . To date, she has been awarded 324 days, or nearly eleven months, of good time credit. That time is subtracted from Webb's release date. Because she will not be incarcerated for that eleven months, she will not be eligible to earn good time credit for that period. She cannot receive good time credit for time she did not serve." Webb v. Deboo, No. 3:03CV961 (PCD) (JGM), slip op.

at 5 (D. Ct. Sept. 22, 2004) ("") (attached as Exhibit 1 to Declaration of Mark T. Quinlivan). Accord Pasciuti v. Drew, 2004 WL 1247813, *5 (N.D.N.Y. June 2, 2004) (holding that "granting GCT for years that will not be served is illogical, because compliance with disciplinary rules during those years is not possible.").

Petitioner's interpretation of § 3624(b) also cannot be squared with another section of that statute, which requires that "credit for the last year or portion of a year of the term of imprisonment *shall be prorated* and credited within the last six weeks of the sentence."  18 U.S.C. § 3624(b)(1) (emphasis added).  Petitioner was sentenced to serve 33 months imprisonment, see Scannell Decl. Attachment B, and therefore will not serve the entirety of his third year of imprisonment.  Yet, under petitioner's theory, under which he is entitled to receive 54 days of GCT credit for each year of his "sentence imposed," Petition at 7, the proration clause would be rendered null, for instead of receiving a prorated portion of GCT credit for the nine months or less that he serves during the third year of his sentence, he would receive the entire 54 days of GCT credit even though he did not serve the full 365 days of that year.  It is well settled, however, that one provision of a statute should not be interpreted in a manner that renders another provision of the same statute superfluous.  See Duncan v. Walker, 533 U.S. 167, 174 (2001); Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998).  As the Ninth Circuit ruled in rejecting a like argument:

> Whereas the model prisoner will ordinarily receive his fifty-four-day credit after complying with prison disciplinary rules for 365 days, under Pacheco's reading, a prisoner who serves 311 days would receive the same number of credits for exhibiting good behavior over only eighty-five percent of the year. Pacheco's interpretation would therefore confer upon the prisoner a bonus during his last year of imprisonment. Nothing in the statute clearly suggests that Congress intended to give the prisoner such a windfall in his last year.

Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268-69 (9th Cir. 2001), cert. denied, 505 U.S. 1105 (2002).

In contrast to petitioner's reading of the statute, BOP's interpretation of § 3624(b) is consistent with the statute's design that GCT credit may be awarded "at the end of each year of the prisoner's term of imprisonment," so long as "during that year," the inmate satisfied the statutory preconditions, and that "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence." Under BOP's calculation, petitioner will receive GCT credit in blocks of up to 54 days at the end of each year in which he actually is incarcerated (provided he satisfies the statutory preconditions), and will receive a prorated portion of GCT credit for the last year, or portion thereof, that he actually serves. As one district court has ruled, this construction of § 3624(b) is "is reasonable, and perhaps inevitable, given the directive of § 3624(b) that GCT be credited 'at the *end* of the prisoner's term of imprisonment.'" Pasciuti, 2004 WL 1247813, * 6.

Indeed, every court save one to have considered this question on the merits has upheld BOP's interpretation of § 3624(b). See Brown v. Hemingway, 53 Fed. Appx. 338, 338, 2002 WL 31845147, ** 1 (6th Cir. 2002)[2] ("The Bureau's interpretation is reasonable in light of the statutory language."); Williams v. Lamanna, 20 Fed. Appx. 360, 361, 2001 WL 1136069 (9th Cir. 2001) ("The statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate."); Pacheco-Camacho, 272 F.3d at 1270 (holding that, under Chevron step two, BOP's interpretation "comports with the

---

[2] Sixth Circuit Rule 28(g) permits citation to unpublished opinions where there is no published opinion on point.

statutory language of section 3624(b), and does not subvert the statutory design); Webb, No. 3:03CV961 (PCD) (JGM), slip op. at 5-6 ("The court concludes that the BOP's method of calculation of good time credit is consistent with and a reasonable interpretation of the statute."); Muratella v. Veltri, Civ. No. 04-456-WDS, slip op. at 2 (S.D. Ill. Sept. 2, 2004) (attached as Exhibit 2 to Declaration of Mark T. Quinlivan) (agreeing that BOP's interpretation of § 3624(b) was reasonable); Graves v. Bledsoe.— F. Supp.2d —, 2004 WL 1941231, * 2 (W.D. Va. Aug. 19, 2004) ("This court finds that the BOP's interpretation is a logical interpretation of the entire statute."); Pasciuti, 2004 WL 1247813, * 6; Martinez v. Wendt, 2003 WL 22456808, * 3 (N.D. Tex. Oct. 24, 2003) (holding that, under Chevron step two, BOP's interpretation "is reasonable and is not effected to subvert the will of Congress."), report and recommendation adopted by, 2003 WL 22724755 (N.D. Tex. Nov. 18, 2003).

Respondent acknowledges that, in White v. Scibana, 314 F. Supp.2d 834 (W.D. Wisc. 2004), on appeal, No. 04-2410 (7th Cir.), the court reached a different conclusion. In that case, the district court concluded that "§ 3624(b) is unambiguous: 'term of imprisonment' means 'sentence imposed.'" Id. at 836. Although noting that, in isolation, the term "term of imprisonment" was arguably ambiguous, the court found that that term was used in several other provisions of § 3624(b), and that "[n]one of the other uses supports a 'time served' interpretation of 'term of imprisonment.'" Id. at 838. See id. (citing use of "term of imprisonment" in §§ 3624(a) and 3624(b)).

Respondent submits that the White decision is not well reasoned and should not be followed. As explained *infra*, under the White court's reasoning, an inmate would receive GCT credit not only for time served, but also for time that was not served because the accumulated

-11-

GCT has shortened the total time an inmate is required to serve before release.  Indeed, in cases such as petitioner's, an inmate would receive GCT credit for an entire year that was not served, notwithstanding the statute's requirement that GCT credit be awarded "at the end of each year of imprisonment," and making it impossible for BOP to measure whether the inmate had displayed exemplary compliance with disciplinary regulations "during that year."   As one court has observed, "[a]ccepting the rationale of Petitioner and the White court would lead to an inconsistency in the statute. . . .  The question that arises is as follows:  Because the statute requires BOP to award GCT at the *end* of a year of imprisonment, then when is that credit vested if a year of imprisonment is never actually served?"  Pasciuti, 2004 WL 1247813, * 5 (emphasis in original).

Moreover, the White court's holding that the term "term of imprisonment" must be construed to have a uniform meaning throughout § 3624 ignores the Supreme Court's admonition that the presumption that identical words in different parts of the same statute are intended to have the same meaning is just that, a presumption, which is "'not rigid'" and which "'readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.'"  General Dynamics Land Sys, Inc. v. Cline, 124 S. Ct. 1236, 1245 (2004) (quoting Atlantic Cleaners & Dryers, Inc. v. United States, 286 U.S. 427, 433 (1932)).  Such is the case here.  Indeed, the White court's analysis would, itself, lead to absurd results.  To take but one example, § 3624(d) provides that an inmate shall be given clothing, a stipend, and transportation upon his or her release "on the expiration of the prisoner's term of imprisonment."  18 U.S.C. § 3624(d).  Following the district court's logic, the stipends for clothing and travel

would be given to an inmate not on the date of his or her actual release, but rather would be delayed until the end of the original sentence imposed, as only the latter would constitute expiration of an inmate's "term of imprisonment." That cannot have been Congress' intent.

Accordingly, the text and structure of § 3624(b) reveal that Congress intended that GCT credit be awarded based upon time actually served, and BOP's interpretation of the statute therefore comports with the statutory language.

## II.     BOP IS ENTITLED TO CHEVRON DEFERENCE

In the alternative, even if this Court were to determine that the language of § 3624(b) were ambiguous, the BOP's interpretation is entitled to due deference under Chevron. In that case, the Supreme Court repeated the "long recognized" rule that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." 467 U.S. at 844. If the language of the statute is ambiguous, but there is an implementing regulation, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. An agency's reading of the statute will be upheld even if it is merely "permissible." Id. at 843. As the Supreme Court held in reference to a similar BOP regulation:

> In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design.

Lopez v. Davis, 531 U.S. 230, 242 (2001); see also Reno v. Koray, 515 U.S. 50, 61 (1995) (deferring to BOP interpretation of "official detention" for applying prior-custody credit pursuant to 18 U.S.C. § 3585(b)). A court therefore does not ask if it would have read the statute the same

way; it simply asks whether it is compelled to reject the agency's construction.  See Pacheco-Camacho, 272 F.3d at 1270.

We submit that a plain reading of § 3624(b) supports the BOP's interpretation.  However, even assuming that the phrase "term of imprisonment" is ambiguous, the BOP's interpretation of it is undoubtedly a reasonable one.  BOP's regulation, 28 C.F.R. § 523.20, reasonably interprets the phrase "term of imprisonment" to preclude the accumulation of GCT credit for time not served.  There is absolutely no allegation or evidence in the record that the regulation is "arbitrary, capricious, or manifestly contrary to the statute."  Chevron, 467 U.S. at 844.  At the very least, the BOP's regulation is a "permissible construction" of the statute, and this is all that Chevron requires.  As the Ninth Circuit stated in Pacheco-Camacho, the BOP's interpretation "comports with the statutory language of section 3624(b), and does not subvert the statutory design.  It establishes an effective and fair prorating scheme, enabling inmates to calculate with reasonable certainty the end of their imprisonment, while preventing certain prisoners from receiving disproportionate good time credits . . . ."  272 F.3d at 1270-71.

## CONCLUSION

Because the text and structure of § 3624(b) reveal that Congress intended that GCT credit be awarded based upon time actually served, and that BOP's interpretation of the statute comports with the statutory language, petitioner's request for mandamus and/or habeas corpus relief must be denied, and the Petition should be dismissed.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>By: /s/ Mark T. Quinlivan
>    MARK T. QUINLIVAN
>    Assistant United States Attorney
>    United States Attorney's Office
>    John Joseph Moakley U.S. Courthouse
>    1 Courthouse Way, Suite 9200
>    Boston, MA  02210
>    617-748-3606

Dated: September 27, 2004

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing Memorandum of Law in Support of Respondent's Motion to Dismiss, and the accompanying Declarations of Stephanie Scannell and Mark T. Quinlivan, by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

James F. Rinaldi
37955-048
FMC - Devens
42 Patton Drive
Ayer, MA 01432

This 27th day of September 2004.

>/s/ Mark T. Quinlivan
>MARK T. QUINLIVAN
>Assistant United States Attorney