UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES F. RINALDI,                    )
                                     )   CIVIL ACTION
            Petitioner,              )   NO. 04-40115-JLT
                                     )
            v.                       )
                                     )
DAVID L. WINN,                       )
                                     )
            Respondent.              )

## PETITIONER'S REPLY, OPPOSITION, AND OBJECTIONS TO THE RESPONDENT'S MOTION TO DISMISS

Most of us have had the experience, either as parents or youngsters, of trying to discover the "hidden picture" within another picture in a children's magazine. Usually you are shown a landscape with trees, bushes, flowers, and other bits of nature.

The caption reads something like this: "concealed somewhere in this picture is a donkey pulling a cart with a boy in it. Can you find them?"

Try as you might, usually you could not find the hidden picture until you turned to a page further back in the magazine which would reveal how cleverly the artist had hidden it from us. If we study the landscape we realize that the whole picture was painted in such a way as to conceal the real picture within, and once we see the "real picture," it stands out like the proverbial sore thumb.

Petitioner James F. Rinaldi ("Petitioner"), acting pro se, avers that the picture painters of the government, specifically the Federal Bureau of Prisons ("BOP") and the Justice Department Attorneys, are denying federal prisoners their due as to the amount of good time Congress intended and the amount of imprisonment Congress intended federal prisoners to serve. The BOP has artfully created the landscape which deliberately hid the real picture: federal prisoners are getting cheated out of 7 days per year good time and are actually serving 87.2% of their sentences instead of getting 54 days per year good time and serving 85% of their sentences.

Petitioner respectfully submits that he will be able to show the Court how to discover this "hidden picture" in the landscape presented in the BOP's argument and the flawed reasoning of the U.S. Court of Appeals for the Seventh and Ninth Circuits that goes against U.S. Supreme Court precedent and the intent of Congress. Once we are able to see through the camouflage, we will see the donkey, the cart, and the boy who have been there all along. The only requirement to see through the camouflage is for the Court to apply the U.S. Supreme Court law as intended.

As a threshold matter, the way that the BOP now calculates federal prisoner's good time, federal prisoners serve more than the amount of imprisonment intended by Congress. Why the BOP clings to this twisted way of calculating federal prisoners good time is a question that remains unanswered.

Petitioner objects to the BOP's Memorandum of Law dated 9/27/04 at page 4, footnote 1. As has been noted in Monahan v. Winn, 276 F. Supp.2d 196 (D. Mass 2003), "[C]ases before me do not challenge 'prison conditions' as that is commonly understood under § 1983. Rather, they challenge BOP's rule revision ... [and] that challenges to the ... conditions of a sentence's execution are proper subjects of a habeas corpus action under § 2241 ... the statutory PLRA exhaustion requirement does not apply." Id. at 204 (cases, quotations, citations and footnote omitted).

Judge Gertner also noted that "[e]zhaustion is a waivable affirmative defense, not a jurisdictional requirement." Id. at 204 Fn. 8 (cases omitted). This analysis is carried further in Zucker v. Menifee, No. 03 Civ. 10077 (RJH), (S.D.N.Y. 2004). The Zucker Court noted that:

> Failure to exhaust may be excused when any of the following circumstances apply: "(1) available remedies provide no 'genuine opportunity for adequate relief'; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be 'futile'; and (4) in certain instances [when] a plaintiff has raised a 'substantial constitutional question.'"

Zucker at 7-8 (cases and citations omitted. The Zucker Court further noted that "the exhaustion requirement for § 2241 petitions is prudential, not statutory ... [thus] failure to exhaust may be excused at the court's discretion." Id. at 8  The Court agreed that exhaustion of administrative remedies would be futile since the highest level of administrative appeal that is available to a federal inmate is to the BOP's General counsel.

3

In the instant case, Petitioner would also experience the same futility, as the BOP has never rescinded its policy or any policy for that matter, in spite of the fact that courts have unequivocally declared them to be invalid. Moreover, Petitioner did write an Inmate Request To Staff Member ("cop-out), to Mr. Steven Gagnon, the Inmate Systems Manager requesting that he be given the 54 days per year as opposed to the 47 days the BOP currently calculates. That request was denied. Therefore, the exhaustion of administrative remedies is not required and is at the discretion of this Court.

Petitioner respectfully asks this Court to exercise its discretion and rule on the merits of Petitioner's pleading. Petitioner believes that as will be discussed below, citing the Supreme Courts precedents, that this Court will see the law the way Petitioner argues and rule favorably to the Petitioner.

Petitioner objects to the BOP's Memorandum of Law ("BOP Mem.") at page 6. The mistaken application of the U.S. Supreme Court's case of <u>Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 476 U.S. 837, (1984). Petitioner will discuss further this mistaken application.

## Objections to Argument I, Page 7 BOP Mem.

When Congress enacted the current good time statute as part of the Comprehensive Crime Control Act of 1984 ("CCCA"), they did

a.'here to a long legislative history in the careful choice of language:

> [A] prisoner who is serving a term of imprisonment of more than 1 year ... may receive credit toward the service
> of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term ... [C]redit for the last year or portion
> of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1).  The 1902 version  "18 U..S.C. § 710 (repealed 1944)] allowed a well-behaved prisoner to serve less time by receiving credit for good time against "the term of his sentence."

When Congress adopted new statutory language in 1948, some courts construed the new language "as requiring good time to be computed on the basis of actual time served rather than on the basis of the term of the sentence as imposed by the court."  H.R. Report 86-935 (Aug. 18, 1959), reprinted in 1959 U.S.C.C.A.N. 2518, 2519.  The precise problem Petitioner is experiencing developed first in 1948: "The effect of this interpretation is to require well-behaved prisoners to serve longer periods of confinement that they would under the method of computation which had been used through half a century."  Id.  To solve this problem, Congress, in 1959, deleted the time served to assure the methodology of crediting against the sentence, not time served. Id.

In the current good time statute, Congress continued the pre-1948 and post-1959 formulation, eschewing language such as "credited as earned and computed monthly" and substituting "term of imprisonment." Thus, Congress specifically considered the loss of good time resulting from calculating against time actually served and rejected that method.

## The same words should mean the same thing in the Statute

The Supreme Court has instructed that identical words - such as "term" and "term of imprisonment" - appearing in different parts of the same act have the same meaning. Sullivan v. Stroop, 496 U.S. 478, 484 (1990). In a bizarre and unwarranted departure from the rule of intra-statutory of consistancy, the BOP treats "term of imprisonment" as the sentence imposed in one part of Section 3624(b) and as time actually served in the rest of Section 3624(b).

"Term of imprisonment" appears in the very first phrase of th statute. There it unanbiguously means the sentence imposed by the court. It makes prisoners sentenced to a "term of imprisonment of more than one year" eligible to receive good time credit. The BOP, the Ninth Circuit and the Seventh Circuit recognize this.*

---

* If the BOP instead interpreted "term of imprisonment of more than 1 year" to mean "time served of more than one year," consistent with its later interpretation, then only those prisoners who actually spend at least one year and one day in

6

Yet where the exact same words - "term" and "term of imprisonment" - are used later in the statute, the Ninth and Seventh Circuits find the words ambiguous and defers to the BOPs different interpretation of the same words to mean "time actually served."

"Term of imprisonment" and "term," in their second, third, and fourth appearances in the statute, mean the exact same thing as in their first unambiguous usage. The principle of intra-statutory consistency renders "term of imprisonment" unambiguous throughout the subsection. Because the words refer to the sentence imposed in the opening phrase of the subsection - and logically can have no other meaning - the words must have the same meaning throughout the statute.

Interestingly, The Ninth Circuit never addressed this obvious inconsistency. The court did recognize that "term of imprisonment" referred unambiguously to the judge's sentence in a different subsection of Section 3624, but refused to resolve the inconsistency. The Ninth Circuit noted that the use of "term of imprisonment" in Section 3624(a) - referring to the date of release - unequivocally refers to "term of imprisonment" as the judge's sentence. See Pacheco -Camacho v. Hood, 272 F.3d 1266, 1271 (9th Cir. 2001). But the Ninth Circuit let this incongruity stand.**

---

* (continued) prison are eligible to receive good time credit. This is not the case. P.S. 5880.28 at 1-45 ("the very shortest sentence that can be awarded [good time credit] is a sentence of at least 1 year and 1 day"). Mr. Pacheco-Camacho, who was sentenced to a year and a day, was eligible for and received good time credit, just not the full statutory allocation. Id. at 1271.

** The Ninth Circuit misplaced reliance on United States v.

The Seventh Circuit in <u>White v. Scibana</u>, No. 04-2410 12/02/04 did address this issue and chose to find a conflict in the usage of the words in the different parts of the statute. The Seventh Circuit painfully parsed the words into ambiguity by citing the Supreme Court case of <u>General Dynamics Land Sys., Inc. v. Cline</u>, 124 S.Ct. 1236. 1238 (2004) for the proposition that the general rule of statutory construction is only a presumption. See <u>White</u>, No. 04-2410 at 9 (quotation omitted).   The Seventh Circuit found the statute ambiguous and mistakenly referred to the <u>Chervron</u> deference.

When Congress means time served, Congress says "time served," not "term of imprisonment."   In Section 3624(b), the phrase "time served is only used to specify that the 54 days is credited "beyond the time served."   Prisoners should receive 54 days credit against terms of imprisonment of over one year, based on 311 days in custody, plus 54 days "beyond the time served," to equal each year (365 days) of the sentence imposed by the judge. The BOP's mathematical formula results in only 47 days good time for every year served. See Exhibit "A".

---

** (continued) <u>Johnson</u>, 529 U.S. 53 (2000). In <u>Johnson</u>, the Court construed the supervised release statute to unambiguously dictate the commencement of supervised release upon release from custody. The Supreme Court found no need to resort to other subsections of the statute because 1) the statute was unambiguous; 2) the same terminology was not used in the different sunsections; and 3) there was no express reference between the relevant statutory subsections.   In this case, the same language is used in both subsections 3624(a) and 3624(b), and § 3624(a) sets the release date as the "term of imprisonment,less any time credited toward the service of the  prisoner's sentence as provided in § (b)." <u>Johnson</u> is irrelevant to the intrastatute inconsistency in § 2624(b).

8

The BOP bases it's calculation of 47 days on "time served" and not the "term of imprisonment." Congress deliberately used the "term of imprisonment," and not "time served." The Supreme Court refrains from concluding that differing language - here "time served" and "term of imprisonment" - has the same meaning in [two subsection] ... We would not presume to ascribe this difference to a simple mistake in draftsmanship. Barnhart v. Sigman Coal Co., 122 S.Ct, 941, 952 (2002) (quotation omitted)

## The BOP has thwarted Congress' intent

Congress made clear its intent to simplify good time calculations in its unambiguous language of § 3624. Sadly, public officials twisted and convoluted interpretation of this simple statute is cheating prisoners out of their due. The taxpayers deserve better.

The Supreme Court looks to the purpose of the statute to aid in interpretation. See United States v. LaBonte, 520 U.S. 751, 757 (1997). The legislative history demonstrates that the CCCA purposefully sought simplification and predictability in the calculation of sentences. Congress specifically referred to the need for change from "the complexity of current law" and the need for good time credit at an "easily determined rate." See Senate Report No. 98-225, reprinted in 1984 U.S.C.C.A.N. at 3329-30.

The formula of 311 + 54 =365 is simple, predictable, and comprehensible, both by the public in general, and by the

9

prisoner, judges, and lawyers whom it most affects. Congress clearly intended Sunsection (b) to "be considerably less complicated than under current law in many respects." Ibid.

The use of "time served" rather than the "term of imprisonment" requires complicated and virtually incomprehensible calculations. The BOP's method - covering 26 explanitory pages - is an eight-step process that the BOP itself terms "arithmetically complicated." See Program Statement 5880.28 at 1-44A. The BOP does not claim that its "arithmetically complicated " formula meets the statutory language - the BOP formula only "best conforms" to the statute. Id. It doesn't matter to the BOP officials that the prisoner serves 87.2% of the sentence rather than the 85% that Congress intended.

The only reason for resorting to this mathematical complexity is an attempt to give effect to the erroneous designation of time served as the baseline. The underlying calculations for individual prisoners are not easily accessible to prisoners or the public. The BOP's methodology thwarts Congress' intent to simplify good time calculations.

Ironically, in the policy statement used to project a prisoner's release date (not the actual calculation), the BOP abandons its tortuous calculation for the simple 15% formula Congress intended: "[e]xpected length of incarceration ... shall reflect the total number of months remaining from the inmate's sentence, less 15% (for sentences over 12 months), and credit for any jail time served. P.S. 5100.07, Chapter 6, at 8 (emphasis added).

From 1959 to 1984, the good time allowance varied depending on the length of the sentence imposed. 18 U.S.C. § 4161 (repealed 1984). The current version specifically employed the phrase "term of imprisonment," consistent with its extensive use elsewhere. The Federal Criminal Code, especially the CCCA, uses "term of imprisonment" over one hundred times. "Term of imprisonment" always means the sentence imposed by the judge.

In spite of the obvious, unambiguous wording of the law, the BOP has chosen to deliberately subvert the intent of Congress in the manner by which this statute is implemented. Their formulation explicitly rejects crediting good time against the sentence imposed by substituting the phrase "for each year served" for "term of imprisonment." As applied to Petitioner, the implementing regulation, in pertinent part reads:

> (a) When considering good conduct time for an inmate serving a sentence for an offense committed on or after April 26, 1996, the Bureau shall award: (1) 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma ...

28 C.F.R. § 523.20(a)(1) (emphasis added). Program Statement 5880.28 adopts the same reasoning.

The BOP explicitly instructs its personnel to ignore the sentence imposed by the trial judge: "It is essential to learn that [good time credit] is not awarded on the basis of the length of the sentence imposed, but rather on the number of days actually served." BOP P.S. 5880.28 at 48.

11

The BOP defends its interpretation with the last sentence of section 3624(b): "Credit for the last year or portion of the year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence." This sentence relates primarily to the time at which good time will be credited to the term of imprisonment and recognizes that sentences will sometimes not run the full year and the credit to an imposed sentence does not thwart this process and, more importantly, the proration process does not intrinsically require that good time credits be calculated against time served.

Most importantly, Congress once again employed "term of imprisonment" as the basis for computation, not time served. Contrary to the Ninth Circuit's view, the 54 days is Congress' determination of the maximum credit against a "term of imprisonment," not a "bonus" or "windfall in the last year." Pacheco-Camacho, 272 F.3d at 1269.

The language of Congress is easily applied by prorating the good time over the term of imprisonment (e.g., 54 days on one year; 27 days for six months; 9 days for two months). The proration is subject to a simple mathematical formula. In counting parts of a day, "[t]he fraction is always dropped." P.S. 5880.28 at 1-45:

$$\frac{\text{days left}}{365} = \frac{x}{54} \qquad \text{or} \qquad x = \frac{54 \times \text{days left}}{365}$$

Congress specifically directed that the proration be based on the

"term of imprisonment" imposed by the court, not the time served by the inmate.    The BOP's "eight-step method by which the proration occurs" has no basis in Section 3624(b):  the statute makes no reference to proration against time served, but rather specifically discusses proration in the context of "term of imprisonment."

The proration is simple:  after previous good time is credited, the last year or part of a year of the term of imprisonment is subject to credit of a proration of 54 days up to the full amount, depending on the amount of the term remaining and the conduct of the prisoner.  Why the BOP chooses to make an "arithmetically complicated" formula is puzzling.

## Objections to II, P. 13;  CHEVRON DEFERENCE DOES NOT APPLY

Both the Ninth and Seventh Circuits concluded that the statute, specifically, "term of imprisonment" is ambiguous.  However, they then mistakenly failed to apply the rule of lenity.  Even were the statute ambiguous (and petitioner contends that it is not and that the  simple artithmetical formula described above is how the good time should be calculated), Supreme Court authority requires application of the rule of lenity, not deference to an executive agency.    The Supreme Court, especially Justice Scalia, provides clear authority rejecting the Ninth and Seventh Circuits approach.    The rule of lenity must be used in construing an ambiguous penal statute.    See  Bifulco v. United States,  447 U.S. 381, 387 (1980).  Deference to the BOP's administrative construction of an ambiguous penal statute "would

13

turn the normal construction of criminal statutes upside down, replacing the doctrine of lenity with the doctrine of severity. See Crandon v. United States, 494 U.S. 152, 177-78 (1990)(Scalia, J., concurring). The Ninth Circuit erred and the Seventh Circuit followed the error, in relying on administrative law principles that apply to statutory silence, rather then criminal law jurisprudence that controls when penal statutes are ambiguous.

A.    Section 3634(b) is a penal statute to which the rule of lenity must be applied

The rule of lenity applies where, even after resort to the language and structure, legislative history, and motivating policies of the statute, reasonable doubt persists about a penal statute's intended scope. United States v. R.L.C., 503 U.S. 291, 305-06 (1992); Bifulco, 447 U..S. at 387.

In the instant case, if there is any doubt as to legislative intent, it is easily clarified by the words of Senator Joseph Biden, co-author of the current statute:

> In the Federal Courts, if a judge says you are going to go to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time - 8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know you'll be in prison for at least 8.5 years.

141 Cong. Rec. S2348-01 (dail ed. Feb. 9, 1995)(emphasis added). Again, why the BOP rule allows only 47 days credit for each year of the sentence imposed, requiring no less than 87.2% of the sentence to be served rather than the 85% mandated by Congress is puzzling. No federal prisoner ever serves less than 87.2% of his sentence.

If the legislative intent is not enough to carry the day, (and petitioner respectfully suggests that it is), then the Supreme Court's precedent in Bifulco, supra, certainly is enough. The Supreme Court in Bifulco addressed statutory ambiguity in the punishment provisions of a federal drug statute. 447 U.S. at 382-83. The defendant asserted that the drug conspiracy statute did not provide for a special parole term.

The Court held that the rule of lenity "must" inform construction of ambiguous criminal statutes, and the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." Id. at 387. There is no room for any other meaning whan the Supreme Court says "must". Thus, agency interpretations of criminal statutes are not applicable in the instant matter.

The statute providing credit for good conduct is a penal statute located in the criminal sentences section of Title 18. The Supreme Court has  found that good time statutes are penal in several contexts. See Lynce v. Mathis, 519 U.S. 433 (1997)(ex post facto); Weaver v. Graham, 450 U.S. 24 (1981)(same); Preiser v. Rodriguez, 411 U.S. 475 (1973)(habeas corpus). Under well - established precedent, the federal good time law is a penal statute to which the rule of lenity applies.

15

B.    Under Crandon, Chevron deference does not apply

Justice Scalia's reasoning in Crandon, supra, teaches that Chevron deference does not apply.    In upholding the BOP's interpretation, the Ninth Circuit applied principles from civil administrative law regarding statutory silence or ambiguity under Chevron USA v. Natural resources Defense Council, 467 U.S. 837 (1984).    Because Chevron does not apply to ambiguous criminal statutes, any statutory ambiguity must be resolved in favor of the prisoners under the rule of lenity.    The Supreme Court addressed this conflict between administrative construction of criminal statutes and the rule of lenity in Crandon, supra.

In    Crandon,    several    private    executives    who    accepted government    positions    received    payments    from    their    private employer    to    compensate    them    for    financial    loss    from    their transfers to public employment. The Court had to decide whether a criminal    code    prohibition    on    supplemental    compensation    to government employees barred the payments. The Court interpreted the penal statute, relying in part on the rule of lenity, to ultimately conclude that the statute did not prohibit payments. 494 U.S. at 178.

In a concurring opinion, Justice Scalia, joined by Justices O'Connor and Kennedy, addressed the weight to be accorded the Executive Branch's interpretation of the penal statute.    The concurring justices drew a clear line between the Executive's duty to implement its interpretation of the statute and the Judicial Branch's function to interpret criminal statutes.    494 U.S.    at 177.

As the Court noted: "The Justice Department, of course, has very specific responsibility to determine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference." Ibid. The concurrence concluded that the executive's construction of a penal statute "is not even deserving of persuasive effect" because it "would turn the normal construction of criminal statutes upside down, replacing the doctrine of lenity with the doctrine of severity. Crandon, 494 U.S. at 178.

This is, of course, exactly what the Ninth and Seventh Circuits have done in their flawed reasonings in Pacheco-Camacho and White v. Scabina, supra. Why so petty of an attitude in giving prisoners their due, or in the alternative, of cheating prisoners out of 7 days per year is a sad reflection on our system of jurisprudence.

At least the Sixth Circuit has the common sense to apply the Crandon concurrence to hold that the rule of lenity, rather than administrative deference, applies to statutory ambiguity regarding punishment. See Dolfi v. Pontesso, 156 F.3d 696, 700 (6th Cir. 1998). Perhaps it's the quality of the air in Ohio or maybe the water. In declining to defer to the Parole Commission's interpretation of a statute, the Sixth Circuit stated that the agency's invocation of Chevron "overlook[s] a crucial distinction between criminal and civil statutes." Id. at 700.

17

In criminal statutes, <u>Chevron</u> does not apply because the Judicial Branch, not the Executive Brance, is entrusted with interpretation of the criminal code:

> Judicial deference under <u>Chevron</u> in the face of statutory ambiguity is not normally followed in criminal cases ... The rule of lenity requires a stricter construction of "ambiguity in a criminal statute," not deference. ... When the Department of Justice made a similar argument in <u>Crandon v. United States</u>, 494, U.S. a52, 177-78, 110 <u>S.Ct. 997, 108 L.Ed.2d</u> 132 (1990), Justice Scalia pointed out in a concurring opinion that <u>Chevron</u> does not require the judiciary to defer to executive interpretations of the criminal code.

<u>Dolfi</u>, 156 F.3d at 700 (citations omitted).  The Ninth Circuit and also the Seventh Circuit, are now in conflict with the Sixth Circuit's implementation of the <u>Crandon</u> concurrence.

While Congress delegates certain tasks to the BOP, it by no means delegates the determination of the maximum amount of good time on a term of imprisonment.  The agency does not purport to lower the maximum good time; the regulation and program statement only claim to implement the good time statute.  The federal courts, not agencies, clarify ambiguous criminal statutes, and executive interpretation under <u>Cheveron</u> "is not even deserving of any persuasive effect." <u>Crandon</u>, 494 U.S. at 177 (Scalia, J., concurring).  Interpretation of Section 3624(b) does not take any executive expertise to which courts should defer.  See <u>Dolfi</u>, 156 F.3d at 700 ("Unlike environmental regulation or occupational safety, criminal law and the interpretation of criminal statutes is the bread and butter of the work of federal courts").

The Ninth Circuit's error lies in its confusion of statutory ambiguity and statutory silence. Statutory ambiguity requires application of the rule of lenity. On the other hand, statutory silence permits the agency to fill the void as it sees fit within reason. See Lopez v. Davis, 531 U.S. 230, 242 (2001). Although arguably unclear, the statute is not silent about the allocation of good time credits. The BOP argues that the statute is ambiguous and then purports to be doing no more than construing the statute. In that case, Chevron deference must give way to the rule of lenity.*

Any ambiguity in then criminal statute establishing the maximum good time credits should be resolved based on the rule of lenity, not the executive branch's tendency toward severity in the treatment of its prosecutorial targets. The rule of lenity requires that the ambiguity be resolved in favor of the defendant, which in this case means by interpreting the credit to apply to the imposed sentence.

As recently as November 10, 2004, the Supreme Court made clear that any ambiguity in a statute is construed in the petitioner's favor and "because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal

---

*    In denying the application of the rule of lenity to a criminal statute, the Ninth Circuit relied on a footnote in Babbitt v. Sweet Home, 515 U.S. 687 (1995). See Pacheco-Camacho, 272 F.3d at 1271. The reliance is misplaced. The critical distinction is that the sentence in Sweet Home applies to "facial challenges to administrative regulations," not "statutory ambiguity" as claimed in the Ninth Circuit's opinion.

or noncriminal context, the rule of lenity applies." See Leocal v. Ashcroft, No. 03-583, CrL, Vol 76, 11/10/04, p. 100, fn. 8, (emphasis added). Thus, there is no room for confusion, as "we must interpret the statute consistently" states, and "whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies." Id. Following this mandate, interpretating 3624 means that credit is to apply to the imposed sentence.

Fredrick Douglass once said: "Power concedes nothing without a demand; it never did and never will. Find out what people will submit to, and you have found the exact amount of injustice which will be imposed upon them." Incarceration beyond legislative authorization is immoral as well as illegal.

From biblical times,* through English common law,** through the founding of the Republic,*** to this very day,**** any doubt about the measure od punishment has been resolved in favor of mercy. Petitioner respectfully asks the Court to rise above the cruel injustice of over-incarceration and grant his motion.

---

\* Compare 2 Corinthians 11:24 with Deuteronomy 25: 1-3 (to encure against exceeding legal punishment, even the persecutors of St. Paul limited punishment to 39 lashes in conformance with then tradition of stopping one short of Jewish law's maximum of forty lashes).

\*\* 1 WILLIAM BLACKSTONE, COMMENTARIES 92 ("A man cannot suffer more punishment than the law assigns, but he may suffer less").

\*\*\* United States v. Wiltberger, 18 U.S. (5 Wheat) 75, 95 (1820)(Marshal C.J.)("The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself.").

\*\*\*\* Glover v. United States, 531 U.S. 198, 204 (2001)(any over-incarceration is sufficient to meet the prejudice requirement for a Sixth Amendment violation based upon ineffective assistance of counsel).

Congress intended for federal prisoners to serve 85% of their sentences and to receive up to 54 days credit per year. As petitioner has shown above, take away the smoke and the mirrors the BOP uses and we are able to see through the camouflage, the donkey (54 days per year), the cart (85% to serve, not 87.2%) and the boy (simple formula, see ante at 12) who have been there all along.

## CONCLUSION

Petitioner's motion should be granted and he should not get cheated out of 7 days per year of the imposed sentence.

Respectfully submitted,

James Rinaldi, pro se
Reg. No. 37955-048
FMC Devens
P.O. Box 879
Ayer, MA 01432-0879
Dated: January 8, 2005

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed postage prepaid first class to: Mark T. Quinlivan, AUSA, 1 Courthouse Way, Suite 9200, Boston, MA 02210 by placing in the prison legal mailbox this 8th day of January, 2005.

James Rinaldi

21