# United States Court of Appeals
## For the First Circuit

---

No. 04-1486

JIMMY PEREZ-OLIVO,

Petitioner, Appellant,

v.

RICARDO E. CHAVEZ, WARDEN, M.D.C. GUAYNABO,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Campbell, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

---

Judith H. Mizner, Assistant Federal Public Defender, by
appointment of the court, for appellant.
Jimmy Perez-Olivo, on brief, pro se.
Nelson Perez-Sosa, Assistant United States Attorney, with whom
H. S. Garcia, United States Attorney, was on brief for appellee.

---

January 7, 2005

---

STAHL, **Senior Circuit Judge**.  Jimmy Perez-Olivo ("Perez-Olivo") appeals the denial of his petition for a Writ of Habeas Corpus filed under 18 U.S.C. § 2241.  He alleges that the Bureau of Prisons ("BOP") has wrongly interpreted 18 U.S.C. § 3624(b)(1), thereby depriving him of the possibility to earn a maximum of fifty-four days of good conduct time for each of the ten years he has been sentenced to serve.  Finding the GCT statute to be ambiguous under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), and the BOP's interpretation reasonable, we affirm the decision of the district court.

## I.   BACKGROUND

Petitioner-appellant Perez-Olivo is currently serving year nine of a ten-year sentence, imposed after he pleaded guilty to one count of violating 21 U.S.C. § 841(a)(1) (possession with intent to distribute two kilograms of cocaine), and one count of violating 18 U.S.C. § 924(c)(1) (possession of a firearm in relation to a drug trafficking crime).  For each year of his incarceration, Perez-Olivo has earned the maximum amount of "good conduct time" ("GCT") available under the GCT statute, 18 U.S.C. § 3624(b), as interpreted by the BOP. The BOP estimates that if Perez-Olivo continues this good conduct, he will earn a total of 470 days GCT to be credited towards his ten-year sentence.  This calculation is based on fifty-four days of earned GCT per year for each complete year Perez-Olivo actually has served, plus a prorated

amount of GCT for the last portion of the year he actually serves.

Perez-Olivo alleges, however, that he is entitled to 540 days of

GCT under 18 U.S.C. § 3624(b)(1).  This difference arises from the

fact that the BOP calculates GCT based on the time the prisoner

actually serves, and Perez-Olivo urges that 18 U.S.C. § 3624(b)(1)

requires that GCT be calculated based on the time the prisoner is

sentenced to serve.   The BOP's method of calculation is set forth

in Program Statement 5880.28, which is part of its Sentencing

Computation Manual.   Through a series of examples, the Program

Statement applies a formula which essentially multiplies the number

of days served by 0.148 (which is 54/365) for a prisoner who has

earned the maximum amount of GTC possible.  This formula has the

effect of awarding a maximum of fifty-four days GCT for each full

year actually served, and a prorated amount of GCT for each portion

of a year actually served, based on a rate of fifty-four days of

GCT per 365 days in a year.[1]

---

[1] To remove this from the abstract, assume a prisoner is sentenced to ten years' imprisonment.  At the end of year one, if the prisoner has "displayed exemplary compliance," the BOP may award him up to a maximum of fifty-four days of GCT.  Assume this exemplary compliance continues for the next seven years.  At the end of year eight, our model prisoner has earned a total of 432 days of GCT (fifty-four days per year for eight years).  This means that, at a minimum, the prisoner will not serve any of year ten. In addition, the prisoner will not serve all of year nine (432 – 365 days not served in year 10 = 67 days in year nine that will not be served).

In order to calculate the prisoner's estimated GCT for year nine, we look to the statute, which instructs us that "credit for the last year or portion of a year of the term of imprisonment shall be prorated."   See 18 U.S.C. § 3624(b)(1).   Since the

The BOP has also promulgated a rule, using the notice and comment procedure of the Administrative Procedure Act, 5 U.S.C. § 553, which reflects its interpretation of "term of imprisonment" as "time served" for purposes of calculating GCT.  See 28 C.F.R. § 523.20.  That rule states that "[p]ursuant to 18 U.S.C. § 3624(b), . . . an inmate earns 54 days credit toward service of sentence (good conduct time credit) for each year served."  28 C.F.R. § 523.20.

Thus, since both the Program Statement and 28 C.F.R. § 523.20 are premised on the BOP's interpretation of "term of imprisonment" in § 3624(b)(1) to mean "time served," we must decide whether it is permissible for the BOP to interpret "term of imprisonment" to mean "time served" rather than "sentence imposed."

## II.  DISCUSSION

When we are asked to review an agency's construction of a statute that it administers, we review that agency's interpretation de novo, subject to established principles of

---

prisoner can receive a maximum of fifty-four days per year served, any period served that is less than one year is prorated at a rate of 54/365.  This means that for each day served in year nine, the prisoner has the potential to earn 0.148 (54/365) days GCT.  Going into year nine, the prisoner starts with only having to serve 298 days (365 - 67 days carried over from his GCT earned during years one through eight) of year nine.  Then, as the prisoner approaches his projected release date, he is simultaneously earning the possibility of additional GCT days.  His total GCT for serving just under eight and three-quarter years in prison is 470 days.  That equals fifty-four days for each of his eight full years served and forty-eight days for his last portion of a year served.

deference, and begin with the language of the statute.    See

Goldings v. Winn, 383 F.3d 17, 21 (1st Cir. 2004).   The statute at

issue here, 18 U.S.C. § 3624(b)(1), provides that:

> [A] prisoner who is serving a term of imprisonment
> of more than 1 year[,] other than a term of
> imprisonment for the duration of a prisoner's life,
> may receive credit toward the service of the
> prisoner's sentence, beyond the time served, of up
> to 54 days at the end of each year of the
> prisoner's term of imprisonment, beginning at the
> end of the first year of the term, subject to
> determination by the [BOP] that, during that year,
> the prisoner has displayed exemplary compliance
> with institutional disciplinary regulations. . . .
> [C]redit for the last year or portion of a year of
> the term of imprisonment shall be prorated and
> credited within the last six weeks of the sentence.

Thus, at the end of each year, a prisoner's conduct is evaluated,

and if the prisoner has "displayed exemplary compliance with

institutional disciplinary regulations," the BOP may award the

prisoner credit of up to fifty-four days at the end of each year of

the prisoner's term of imprisonment.   See 18 U.S.C. § 3624(b)(1).

A.          Judicial Review of 18 U.S.C. § 3624(b)(1)

        To evaluate the BOP's interpretation of "term of

imprisonment" as used in the GCT statute to mean "time served," we

look to the familiar two-part test enunciated in Chevron, U.S.A.,

Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43

(1984).    First, "employing traditional tools of statutory

construction, [we must] ascertain[] [whether] Congress had an

intention on the precise question at issue."   Id. at 843 n.9.   If

the answer to this inquiry is yes, then "that intention is the law

and must be given effect."  See id.  If, however, "the statute is
silent or ambiguous with respect to the specific issue, the
question for the court is whether the agency's answer is based on
a permissible construction of the statute."  Id. at 843.

(1)        Language of the Statute

        In step one of our Chevron analysis, we must ascertain
whether Congress has spoken on the precise question at issue.  Id.,
467 U.S. at 843 n.9.  We begin with the actual language of the
statute, and ask whether the phrase "term of imprisonment" has a
"plain and unambiguous meaning with regard to the particular
dispute in [this] case."  See Duckworth v. Pratt & Whitney, Inc.,
152 F.3d 1, 5 (1st Cir. 1998) (quoting Robinson v. Shell Oil Co.,
519 U.S. 337, 340 (1997)).  Because Congress has chosen not to
define the phrase "term of imprisonment" in the statute itself, we
can look to the dictionary for clarification of the plain meaning
of the words selected by Congress.  See United States v. Lachman,
387 F.3d 42, 50 (1st Cir. 2004) ("Dictionaries of the English
language are a fundamental tool in ascertaining the plain meaning
of terms used in statutes and regulations.").  Webster's Third New
International Dictionary (1996) defines "term" as "a limited or
definite extent of time: the time for which something lasts."  It
defines "imprisonment" as "constraint of a person either by force
or by such other coercion as restrains him within limits against

-6-

his will."  The dictionary does little to resolve the ambiguity
posed here.

(2)        Statute as a Whole

        Having determined that the plain language of the statute,
standing alone, is ambiguous, we next ask whether this ambiguity
can be resolved by looking to the "specific context in which [the]
language is used, and the broader context of the statute as a
whole."  Robinson, 519 U.S. at 341.  Contrary to Perez-Olivo's
contention, and the now-reversed conclusion of the United States
District Court for the Western District of Wisconsin in White v.
Scibana, 314 F. Supp. 2d 834, 838-39 (W.D. Wis. 2004), rev'd, White
v. Scibana, No. 04-2410, 2004 WL 2749863 (7th Cir. Dec. 2, 2004),
the phrase "term of imprisonment" is used inconsistently throughout
18 U.S.C. § 3624.   For example, in § 3624(a), "term of
imprisonment" plainly refers to the "sentence imposed."  That
section states that each prisoner "shall be released by the [BOP]
on the date of the expiration of the prisoner's term of
imprisonment, less any time credited toward the service of the
prisoner's sentence."  18 U.S.C. § 3624(a).  Plainly, if the BOP is
instructed to deduct time credited from the "term of imprisonment,"
then the "term of imprisonment" can only mean the "sentence
imposed."  See 18 U.S.C. § 3624(a).

        We compare the use of the phrase "term of imprisonment"
in § 3624(a) with the use of that same phrase in § 3624(d).  In

-7-

§ 3624(d), the phrase "term of imprisonment" is plainly used to mean "time served."  That section states: "Upon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the [BOP] shall furnish the prisoner with [suitable clothing, an amount of money not to exceed $500, and transportation]."  18 U.S.C. § 3624(d).  Plainly, Congress intended the prisoner be furnished with these items upon release after completion of his "time served."  See 18 U.S.C. § 3624(d); see also Loeffler v. Bureau of Prisons, No. 04-4627, 2004 WL 2417805, at *3 (S.D.N.Y. Oct. 29, 2004) ("[I]t would make no sense to provide these amenities at a time when the prisoner's original imposed sentence had expired--a date that would obviously occur after the prisoner had been released based on the good time credits.").

(3)        Legislative History

        After finding that the statute as a whole does not resolve the ambiguity, we next check the legislative history of the statute to confirm our conclusion.  See Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir. 1995) ("[T]he congressional intendment conveyed by unclear statutory language may be discernible from its legislative history.").[2]

_____

    [2] Some circuits have questioned the role of legislative history in step one of a Chevron analysis.  See, e.g., Coke v. Long Island Care At Home, Ltd., 376 F.3d 118, 127 & n.3 (2d Cir. 2004) (commenting that "the Supreme Court has issued mixed messages as to whether a court may consider legislative history [in the first step of a Chevron analysis]"); Am. Rivers v. Fed. Energy Regulatory Comm'n, 201 F.3d 1186, 1196 & n.16 (9th Cir. 2000)

An earlier GCT statute, 18 U.S.C. § 4161 (repealed), was
in effect in various forms from 1902 until 1984, at which time
Congress codified the current GCT statute as part of the
Comprehensive Crime Control Act ("CCCA").  See Pub. L. No. 98-473,
98 Stat. 1976 (1984) (codified as amended in scattered sections of
18, 21, 28, 31, and 42 U.S.C.).  The legislative history of the
repealed GCT statute reveals a clear congressional intent to
calculate GCT based on the "sentence imposed" rather than the "time
served."  See, e.g., H. Rep. 86-935 (1959), reprinted in 1959
U.S.C.C.A.N. 2518, 2518-19 (discussing 1959 amendment to § 4161
intended in part to reverse a 1952 court decision interpreting the
statute as requiring GCT to be calculated based on time served
rather than sentence imposed).  Contrary to Perez-Olivo's
contention, however, the legislative history of the GCT statute at
issue in this case does not indicate any congressional intent to
calculate GCT based on "time served" or "sentence imposed."

---

("acknowledg[ing] the debate over the propriety, under Chevron, of
venturing beyond plain meaning analysis and resorting to
traditional implements of statutory construction to ascertain a
clear congressional directive").  First, we note that the Supreme
Court has recently again used legislative history to confirm the
plain meaning of language used in a statute in step one of its
Chevron analysis. See Gen. Dynamics Land Sys. v. Cline, 124 S. Ct.
1236, 1241-43 (2004).  Second, in this case, we merely use the
legislative history to confirm that it does not resolve the
ambiguity in § 3624(b)(1), and therefore we need not reach the
issue of whether we would accept the legislative history as
conclusive evidence of Congress' intent to interpret "term of
imprisonment" if it were contrary to the BOP's interpretation.

An overarching purpose of the new GCT statute was to make the "computation of credit toward early release pursuant to section 3624(b) [] considerably less complicated than under current law." S. Rep. 98-224, at 146 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3329.  The "current law" at that time provided for, among other things, a different rate of GCT depending on the length of the prison term.  See id.  This goal of simplification in the new statute was intended to serve two functions:  to increase the certainty of a prisoner's release date and to promote administrative efficacy.  See id. at 147, 1984 U.S.C.C.A.N. at 3330.

Perez-Olivo argues that this legislative intent to simplify the computation of GCT supports his position that he should earn fifty-four days per year for each year of his ten-year sentence imposed--what could be easier than multiplying fifty-four by ten?  Perez-Olivo's position, however, does not account for the proration language contained in the last sentence of § 3624(b)(1), which states that "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."  18 U.S.C. § 3624(b).  In light of this proration language, the BOP's method of calculation could not be simpler:  a prisoner earns fifty-four days per year for each year served, and then the last portion of the year served is prorated based on a rate of 54/365.  Thus, it conforms with the

legislative intent evidenced in the Senate Report that "[t]he credit toward early release is earned at a steady and easily determined rate that will have an obvious impact on the prisoner's release date."   See S. Rep. 98-224 at 147, 1984 U.S.C.C.A.N. at 3330.

Perez-Olivo proposes an alternative interpretation of the proration language.  He claims that it is included in the statute simply because "not all sentences are for full years."  According to Perez-Olivo, if a prisoner is sentenced to one and one-half years, the proration language is included in the statute to address the "one-half year" portion of that sentence.   Although we find Perez-Olivo's reading of the proration language unpersuasive, it does serve to confirm our original conclusion that "term of imprisonment," as used in § 3624(b)(1), is ambiguous--an ambiguity that cannot be resolved by looking to the legislative history of the statute.

In further support of his position, Perez-Olivo points to general statements regarding GCT made just after the passage of the CCCA.   See, e.g., 131 Cong. Rec. E37-02 (Jan. 3, 1985) (Statement of Rep. Lee Hamilton introducing his Washington report for Wed., Oct. 31, 1984, into the Cong. Rec., which states: "Now sentences will be reduced only 15% for good behavior.").  We find that such statements do not evidence a clear congressional intent to calculate GCT based on "sentence imposed," but instead can be

read to indicate a "shorthand reference to the fact that the statute permits a prisoner to receive GCT credit based on 15% of the prisoner's time served (54 days divided by 365 days) rather than a <u>sub silentio</u> interpretation of the meaning of 'term of imprisonment.'"  See <u>Loeffler</u>, 2004 WL 2417805, at *5 n.1.  Thus, the legislative history does not help resolve the ambiguity.[3]

(4)        Other Jurisdictions

Lastly, we note that we are not alone in our conclusion that § 3624(b)(1) is ambiguous.  Almost every other court that has visited this issue, including two other circuit courts of appeal,[4] has found that "term of imprisonment" is ambiguous as used in §

---

[3] Perez-Olivo also urges us to consider Senator Joseph Biden's comments in the Congressional Record as legislative history supporting his reading of the statute.  See 141 Cong. Rec. S2348-01, S2349 (Feb. 9, 1995) (statement of Sen. Biden).  Senator Biden, nearly twelve years after the passage of the CCCA, was quoted as saying "I was the coauthor of [the CCCA].  In the Federal courts, if a judge says you are going to go to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time--8.5 years, which is what the law mandates.  You can get up to 1.5 years in good time credits, but that is all.  And we abolished parole.  So you know you'll be in prison for at least 8.5 years." <u>Id.</u>  We first question whether statements made almost twelve years after the passage of an act can appropriately be used as interpretive guides.  See <u>Goldings</u>, 383 F.3d at 32 (noting that "there is reason to heed the Supreme Court's frequent admonition that using subsequent legislative history to interpret a statute is a hazardous endeavor").  Second, as discussed above, Senator Biden's references to "85 percent" and "8.5 years" can be construed as mere shorthand for the calculation of GCT.  See <u>Loeffler</u>, 2004 WL 2417805, at *5 n.1.

[4] The Sixth Circuit has also upheld the BOP's method of calculation in two unpublished opinions, <u>Brown</u> v. <u>Hemingway</u>, 53 Fed. Appx. 338 (6th Cir. 2002); <u>Williams</u> v. <u>Lamanna</u>, 20 Fed. Appx. 360 (6th Cir. 2001).

3624(b)(1) and has upheld the BOP's interpretation of that term as meaning "time served."  White v. Scibana, No. 04-2410, 2004 WL 2749863, at *4 (7th Cir. Dec. 2, 2004); Pacheco-Camacho v. Hood, 272 F.3d 1266, 1271 (9th Cir. 2001); Moore v. Bureau of Prisons, No. 04-5011, 2004 WL 2609589 (S.D.N.Y. Nov. 17, 2004); Young v. Ashcroft, No. 04-1449, 2004 WL 2624724 (D. Or. Nov. 16, 2004); Sash v. Zenk, No. 04-2476, 2004 WL 2549724 (E.D.N.Y Nov. 9, 2004); Loeffler, 2004 WL 2417805, at *3; Graves v. Bledsoe, 334 F. Supp. 2d 906, 908 (W.D. Va. Aug. 19, 2004); Pasciuti v. Drew, No. 04-043, 2004 WL 1247813, at *4-5 (N.D.N.Y. June 2, 2004).[5]  The only court that has found "term of imprisonment" to mean unambiguously "sentence imposed" was recently reversed on appeal.  See White v. Scibana, No. 04-2410, 2004 WL 2749863 (7th Cir. Dec. 2, 2004) (reversing White v. Scibana, 314 F. Supp. 2d 834 (W.D. Wisc. 2004)).  We now join these other courts and conclude that the phrase "term of imprisonment" as used in § 3634(b) is ambiguous, and that this ambiguity cannot be resolved by looking at either the context of the statute as a whole or the statute's legislative history.

B.         Review of the BOP's Interpretation of 18 U.S.C. § 3624(b)

         Thus, having determined that § 3624(b)(1) is ambiguous, we move to the second step in our Chevron analysis and ask whether

---

[5] A notice of appeal was filed with the Second Circuit on June 21, 2004, and the parties are currently submitting briefs.  See Pasciuti v. Drew, No. 04-4039 (2d Cir.).

the BOP's interpretation of the statute is a reasonable one.  See

Bryson v. Shumway, 308 F.3d 79, 86-87 (1st Cir. 2002) ("If Congress

has not spoken on the precise question at issue, we respect the

statutory interpretation of the federal administrative agency given

that   interpretative   task,   unless   the   interpretation   is

unreasonable.").

(1)        Delegation of Authority to Interpret § 3624(b)

        As  a  preliminary  matter,  since  there  is  no  express

delegation of authority by Congress to the BOP in the statute to

interpret the phrase "term of imprisonment," we must ask whether

Congress has implicitly delegated this interpretative authority to

the BOP.  See Pacheco-Camacho, 272 F.3d at 1270.  We conclude that

it has.

        We  begin  by  noting  that  5 U.S.C. § 301  provides  for

executive  agency  rulemaking  authority,  and  that  the  Attorney

General has expressly authorized the BOP "[to take final action in]

[a]pproving  inmate  disciplinary  and  good  time  regulations  (18

U.S.C. § 3624)."   28 C.F.R. § 0.96(s).   Moreover, under the GCT

statute, the BOP is charged with evaluating prisoner conduct to

determine whether a prisoner has earned GCT, and if so, how much.

The statute provides that the award of GCT is:

> subject to determination by the Bureau of Prisons
> that, during [the] year, the prisoner has displayed
> exemplary   compliance   with   institutional
> disciplinary regulations. . . . [and] if the Bureau
> determines that, during that year, the prisoner has
> not satisfactorily complied with such institutional

-14-

regulations, the prisoner shall receive no such credit toward services of the prisoner's sentence or shall receive such lesser credit <u>as the Bureau determines to be appropriate</u>.

18 U.S.C. § 3624(b)(1) (emphasis added).

The BOP is also charged with prorating GCT credit "for the last year or portion of a year of the term of imprisonment." <u>Id.</u>  Therefore, the BOP must necessarily interpret "term of imprisonment," either as "time served" or "sentence imposed," in order to determine how much GCT can be awarded.

(2)      <u>Whether the BOP's Interpretation is Reasonable</u>

Having determined that Congress has implicitly charged the BOP with interpreting the ambiguous phrase "term of imprisonment," we need only inquire whether the BOP's interpretation is reasonable.[6]  <u>See</u> <u>Chevron</u>, 467 U.S. at 844.  The statute first directs the BOP that a prisoner "may receive credit toward the service of the prisoner's sentence . . . <u>at the end of each year</u>."  18 U.S.C. § 3624(b)(1).  This is a clear congressional

_____

[6] The BOP Program Statement would not likely be entitled to full <u>Chevron</u> deference, but should be accorded some lesser degree of deference under the Supreme Court's decisions in <u>United States v. Mead Corp.</u>, 533 U.S. 218, 230-31 (2001), and <u>Skidmore</u> v. <u>Swift & Co.</u>, 323 U.S. 134, 140 (1944).  We need not, however, attempt to discern the appropriate level of deference, because the BOP's interpretation of the statute (calculating GCT based on "time-served") is embodied in 28 C.F.R. § 523.20, which was adopted pursuant to the notice-and-comment procedure of the Administrative Procedure Act, <u>see</u> 62 Fed. Reg. 50,786 (Sept. 26, 1997).  Thus, the BOP policy of calculating GCT based on "time served" is entitled to full deference under <u>Chevron</u>.  <u>See</u> <u>Bryson</u>, 308 F.3d at 84; <u>see also</u> <u>White</u>, 2004 WL 2749863, at *3; <u>Pacheco-Comacho</u>, 272 F.3d at 1268.

directive that the BOP look retroactively at a prisoner's conduct over the prior year, which makes it reasonable for the BOP only to award GCT for time served.

Second, the statute goes on to direct the BOP that a prisoner only may receive GCT "[if] the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). This evidences Congress' clear intent that the BOP evaluate a prisoner's conduct during his time in prison, making it reasonable for the BOP to require that time actually be served in order for the conduct during that time to be evaluated.

Lastly, the statute provides that "credit for the last year or portion of a year of the term of imprisonment shall be prorated." 18 U.S.C. § 3624(b)(1). We find it reasonable for the BOP to read this proration language in conjunction with the "54 days at the end of each year" language to allow a prisoner to earn a maximum of fifty-four days for each full year served, and then to earn a prorated amount of GCT for the last portion of a year served, at a rate of 54/365 GCT days per year.

(3)      Rule of Lenity

Perez-Olivo argues, however, that we should not give deference under Chevron to the BOP's interpretation of the GCT statute. He argues instead that we should apply the rule of lenity. We disagree. The rule of lenity provides that "where there is ambiguity in a criminal statute, doubts are resolved in

favor of the defendant." <u>United States</u> v. <u>Bass</u>, 404 U.S. 336, 348 (1971).  Here, we are evaluating the reasonableness of the BOP's calculation of reductions in a sentence for GCT, which is not, strictly speaking, a "criminal" statute, and thus we do not believe the rule of lenity would apply.  This determination, however, is unnecessary, because even if we were to assume, <u>arguendo</u>, that the GCT statute was "criminal," we note that "[t]he rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended."  <u>Reno</u> v. <u>Koray</u>, 515 U.S. 50, 65 (1995) (citations and internal quotation marks omitted).  Furthermore, the rule of lenity does not foreclose deference to an administrative agency's reasonable interpretation of a statute.  <u>See</u> <u>Babbitt</u> v. <u>Sweet Home Chapter of Communities</u>, 515 U.S. 687, 704 n.18 (1995) ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement.").  Thus, because we find that the BOP's method of calculating GCT based on "time served" is reasonable under § 3624(b), it would be unnecessary to resort to the rule of lenity even if it were to apply to the GCT statute.

## III. CONCLUSION

For the reasons set forth above, the denial of Perez-Olivo's petition for a Writ of Habeas Corpus under 18 U.S.C. § 2241 is **AFFIRMED.**